**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EDWIN JOSE RODRIGUEZ,

    Plaintiff

v.

MARKWAYNE MULLIN,[1] et al.,

    Defendants

Case No.: 2:26-cv-00531-APG-NJK

**Order Granting in Part Petition for Habeas Corpus and Declaratory Action**

[ECF No. 1]

Edwin Jose Rivera Rodriguez is a noncitizen currently detained by Immigration and Customs Enforcement (ICE). ECF No. 1 at 4.  He entered the United States in 2023 and filed an application for asylum, which is still pending. *Id.* at 29.  He was charged in Utah state court with one count of misdemeanor retail theft in 2025, where he was accused of stealing about $30 worth of merchandise. *Id.*  He appeared at a Utah state courthouse for a criminal hearing on February 3, 2026, where ICE detained him. *Id.* at 30.  ICE served him with a Notice to Appear, charging him with being removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) as a noncitizen "present in the United States without being admitted or paroled." ECF No. 1-1 at 1.  He remains detained in civil immigration custody at the Nevada Southern Detention Center. *Id.* at 10.

Rodriguez filed this petition for habeas corpus seeking his immediate release.  He also argues he would be entitled to a bond hearing under 8 U.S.C. § 1226(a) if not for the Laken Riley Act (LRA), a recent amendment to the INA.  He raises as applied and facial challenges to the constitutionality of the LRA, specifically its provision that mandates detention of "any alien"

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

who is "inadmissible under [8 U.S.C. § 1182(a)(6)(A), (6)(C), or (7)]" and "is charged with . . . committing acts which constitute the essential elements of any . . . theft [or] . . . shoplifting . . . offense . . . ." 8 U.S.C. § 1226(c)(1)(E).

The government responds that detaining Rodriguez without bond pending removal proceedings is lawful under two statutory provisions of the INA.  First, it argues that 8 U.S.C. § 1225(b)(2)(A) independently mandates Rodriguez's detention while removal proceedings against him are pending.  The government's position on § 1225(b)(2)(A) reflects its new interpretation of the statute as outlined by interim guidance issued by the Department of Homeland Security (DHS) in July 2025. Interim Guidance, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX.  Second, it argues that Rodriguez is subject to mandatory detention under the LRA due to his theft charge.  But the government does not respond to any of Rodriguez's arguments that the LRA is unconstitutional.  Additionally, the government contends I lack jurisdiction over Rodriguez's petition under 8 U.S.C. § 1252.[2]

The best reading of § 1225 is that it applies only in the border context, and thus § 1226 governs Rodriguez's detention.  I order that Rodriguez must be provided an individualized bond hearing under § 1226(a) because the government waived any argument that detaining Rodriguez under § 1226(c)(1)(E) is constitutional as applied to him.

I.      DISCUSSION

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in

---

[2] This argument appears in the government's response to a habeas petition in *Jacobo Ramirez v. Noem*, No. 2:25-cv-02136-RFB-MDC, ECF No. 39 (D. Nev. Dec. 3, 2025).  The government incorporated by reference its *Jacobo Ramirez* response in this action.

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**A.  I have jurisdiction over Rodriguez's petition.**

Rodriguez cites 28 U.S.C. § 2241 to establish that I have jurisdiction to determine the legality of his detention.  The government argues that 8 U.S.C. §§ 1252(g) and (b)(9) preclude review of his petition.

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).  The Supreme Court has given a "narrow reading" to § 1252(g). *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original) (quoting 8 U.S.C. § 1252(g)).  Instead of "sweep[ing] in any claim that can technically be said to 'arise from' the three listed actions," the provision "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).  Because

Rodriguez challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of those three specific actions. *See Hernandez-Luna v. Noem*, No. 2:25-cv-01818-GMN-EJY, 2025 WL 3102039, at *2 (D. Nev. Nov. 6, 2025). Therefore, § 1252(g) does not preclude review here.

The government also argues that under § 1252(b)(9), review of any issue arising from any removal-related activity is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Otherwise, "no court shall have jurisdiction . . . to review . . . such questions of law or fact," including under § 2241. *Id.* The Supreme Court has indicated that § 1252(b)(9) does not bar review of a noncitizen detainee's petition where the petitioner is not "asking for review of an order of removal," is not "challenging the decision to detain them in the first place or to seek removal," and is not "challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294. Here, Rodriguez's challenge to his detention without a bond hearing does not fall in any of these three categories and is a separate legal issue from the consideration of the merits of his removal proceeding. *See Hernandez-Luna*, 2025 WL 3102039, at *2; *Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184, at *4 (D. Utah Jan. 16, 2026). Therefore, § 1252(b)(9) also does not bar review here, and I have jurisdiction to consider Rodriguez's petition.

**B. Section 1226, not 1225, governs Rodriguez's detention.**

Rodriguez argues he is entitled to a bond hearing under § 1226(a) to determine if he can be released from detention while his removal proceedings are ongoing. The government argues

4

that Rodriguez is an "applicant for admission" and therefore § 1225(b)(2)(A), not § 1226(a), mandates his detention without a bond hearing.  Rodriguez replies that courts have "'repeatedly'" found that the government's "'novel statutory interpretation'" of § 1225(b)(2)(A) is unlawful. ECF No. 8 at 4-5 (quoting *Maldonado-Jovel v. Noem*, No. 2:26-cv-00360-RFB-EJY, 2026 WL 497341, at *1 (D. Nev. Feb. 23, 2026)).

The Supreme Court has previously summarized that "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.

Section 1226(a) authorizes that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  "Except as provided in subsection (c)," when a noncitizen is arrested under § 1226(a), the Attorney General may detain him or release him on bond or conditional parole. *Id.* at § 1226(a)(1), (2).  This process includes the right to a bond hearing before an immigration judge. *See* 8 C.F.R. § 1236.1(d).

Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289.  It mandates detention for a noncitizen "who falls into one of several enumerated categories involving criminal offenses." *Id.*  The LRA amended § 1226(c) to add theft offenses to those that trigger mandatory detention. 8 U.S.C. § 1226(c)(1)(E)(ii).

As characterized by the Ninth Circuit, § 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1197 (9th Cir. 2022).  Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining

5

immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" during the course of removal proceedings. An applicant for admission is an "alien present in the United States who has not been admitted or who arrives in the United States . . . ." *Id*. at § 1225(a)(1). Although § 1225(b)(2)(A) generally mandates detention, "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

Since DHS issued its new interpretation of § 1225(b)(2)(A), "much ink has been spilled" over whether it mandates the detention of noncitizens like Rodriguez who have resided in the country for an extended period of time. *Hernandez-Luna*, 2025 WL 3102039, at *5. The Seventh Circuit considered the statutory question on an interim basis and found the government was "not likely to succeed" on the merits "[b]ased upon the text and structure of [§§ 1225 and 1226]." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). But the Fifth and Eighth Circuits have adopted the government's interpretation. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026); *Avila v. Bondi*, --- F.4th ---, No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026). In all three circuit opinions, the panels were split two to one.

Considering the text, structure, and history of the INA, the government's interpretation of § 1225(b)(2)(A) is incorrect. Section § 1225(b)(2)(A) governs only inspections at the United States' international borders and thus cannot justify the detention of a noncitizen, like Rodriguez, detained within the country. Instead, § 1226 governs the detention of noncitizens found within the country. In the interest of judicial economy, I incorporate by reference Judge Boulware's statutory analysis of the INA in *Jacobo Ramirez v. Mullin*, No. 2:25-cv-02136-RFB-MDC, 2026

6

U.S. Dist. LEXIS 67643 (D. Nev. Mar. 30, 2026). Specifically, I incorporate sections IV, VI.C.1, 2, and 4 regarding the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and prior agency practice and major questions implications for DHS's change in policy. *Id.* at \*14-22, 29-75, 85-90. Additionally, I note that applying § 1226 to noncitizens residing within the United States, such that they may be eligible for a bond hearing under § 1226(a), is consistent with the longstanding distinction found throughout immigration law that "recognizes arriving noncitizens have less due process protections than those present and residing within the country's borders." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1154 (D. Nev. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001)).

The government argues that I should adopt the Fifth Circuit's reasoning in *Buenrostro-Mendez* such that § 1225(b)(2)(A) mandates Rodriguez's detention because he is an "applicant for admission." While opinions from other circuits are persuasive authority, they are not binding. *Buenrostro-Mendez* is not the best reading of the statute because, as stated more fully in *Jacobo Ramirez*, it discounts the Supreme Court's summary of §§ 1225 and 1226 in *Jennings* as mere dicta, reads redundancy into § 1225(b)(2)(A) at odds with the canon against surplusage, renders much of the LRA redundant, and misapplies the legislative history of the INA. *Jacobo Ramirez*, 2026 U.S. Dist. LEXIS 67643 at \*15, 49-50, 59-61, 69-71.

The final issue to determine which INA provision applies to Rodriguez's detention is whether his asylum application could be considered "seeking admission" under § 1225(b)(2)(A). The Supreme Court has recognized that "[l]awful status and admission . . . are distinct concepts in immigration law" such that "[e]stablishing one does not necessarily establish the other." *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). "[A] foreign national can be in lawful status but not admitted" such as "someone who entered the country unlawfully, but then received

asylum." *Id.* Therefore, applying for asylum is seeking lawful status in, not admission into, the country, and Rodriguez is not "seeking admission" despite his pending asylum application. Because Rodriguez was detained within the United States, far from the border, years after he physically entered the country, § 1226 governs his detention.

**C. The LRA is unconstitutional as applied to Rodriguez because the government waived any argument to the contrary.**

Though § 1226 applies to Rodriguez's detention, he may still not be entitled to a bond hearing if the LRA, codified at § 1226(c)(1)(E)(ii), governs his detention due to his theft charge. The government contends it does. Rodriguez argues that the LRA's mandatory detention scheme is facially unconstitutional and unconstitutional as applied to him because it violates substantive and procedural due process under the Fifth Amendment. Rodriguez raised these arguments throughout his habeas petition and asked that I declare the LRA unconstitutional, but the government did not respond to these arguments.[3] The government thus waived a defense to Rodriguez's constitutional arguments. *See United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc). Therefore, as applied to Rodriguez, mandatory detention without a bond hearing under the LRA violates his procedural due process rights. *See Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819, at *6, 11 (D. Mass. Sept. 5, 2025) (finding that mandatory detention without a bond hearing under the LRA violated the petitioner's procedural due process rights); *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct.

---

[3] In the government's response to the habeas petition in *Jacobo Ramirez*, it argues that the petitioner's detention under § 1225(b) does not violate the petitioner's procedural due process rights. No. 2:25-cv-02136-RFB-MDC, ECF No. 39 at 19-22. It does not address whether the LRA separately offends procedural due process rights. *See id.*

14, 2025) (finding that "the *Matthews*[4] factors weigh in favor of Petitioner on his as applied due process challenge to § 1226(c)(1)(E)(ii)").  I do not rule on Rodriguez's facial challenges to the constitutionality of the LRA nor his argument that the LRA is unconstitutional as applied to him by violating his substantive due process rights because those issues are not necessary to resolve his petition.

Accordingly, Rodriguez is not subject to detention without a bond hearing under the LRA, and he is entitled to an individualized bond hearing under § 1226(a).

**II.     CONCLUSION**

I THEREFORE ORDER that petitioner Edwin Rodriquez's petition for writ of habeas corpus **(ECF No. 1) is GRANTED in part**.

I FURTHER ORDER the respondents to provide Rodriguez with an individualized bond hearing under 8 U.S.C. § 1226 and 8 C.F.R. § 236.1(d) by April 8, 2026.

I FURTHER ORDER that if an individualized bond hearing is not provided by April 8, 2026, Rodriguez must be released from ICE custody until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

I FURTHER ORDER that respondents are PERMANENTLY ENJOINED from denying Rodriguez the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

I FURTHER ORDER  the parties to file a Joint Status Report by April 13, 2026 confirming compliance with this order.  The status report must detail whether and when the

---

[4] *Mathews v. Eldridge*, 424 U.S. 319, 332, 335 (1976) (setting forth the factors that courts consider when determining whether government action violates procedural due process).

ordered bond hearing occurred, whether bond was granted or denied, and if denied, the reasons for that denial.

DATED this 1st day of April, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE